1
2
3
4
5                         UNITED STATES DISTRICT COURT
6                              DISTRICT OF NEVADA
7                                    * * *

8    TRUSTEES OF THE NEVADA RESORT            Case No. 2:11-cv-00044-MMD-NJK
     ASSOCIATION – INTERNATIONAL
9    ALLIANCE OF THEATRICAL STAGE                          ORDER
     EMPLOYEES AND MOVING PICTURE
10   MACHINE OPERATORS OF THE UNITED          (Plf.'s Motion for Summary
     STATES AND CANADA LOCAL 720              Judgment – dkt. no. 77;
11   PENSION TRUST,                           Plf.'s Motion to Seal Motion for
                                              Summary Judgment – dkt. no. 78;
12                            Plaintiff,      Def.'s Motion for Hearing regarding Motion
                                              for Summary Judgment – dkt. no. 92)
13        v.

14   GRASSWOOD PARTNERS, INC., et al.,

15                            Defendants.

16   **I.    SUMMARY**

17        Before the Court are Plaintiff's Motion for Summary Judgment (dkt. no. 77),

18   Motion for Permission to File Exhibits to Motion for Summary Judgment under Seal (dkt.

19   no. 78), and Defendant Messner & Smith Theme/Value Investment Management, Ltd.'s

20   ("Messner") Motion for Hearing on Plaintiff's Motion for Summary Judgment (dkt. no. 92).

21   **II.   BACKGROUND**

22        The claims in this case are premised on allegations that a pension plan's

23   investment manager and investment consultant allegedly engaged in investments

24   contrary to the plan's investment policy and the best interests of the plan and its

25   beneficiaries, with the consultant wrongfully profiting from the plan's investments.  While

26   the plan's investment manager and investment consultant offer explanations supporting

27   their challenged conduct and allegations to create a factual dispute, the material facts

28   are not in disputed.  Unless otherwise noted, the facts below are undisputed.

### A.     The Parties and the Investment Policy

Trustees of the Nevada Resort Association – International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust ("Trustees," or "IATSE") are fiduciaries of a multiemployer pension plan that provides pensions to union stagehands in Southern Nevada.  Trustees hired Messner as an investment manager in 1995.  Messner was hired to invest Trustees' Pension Plan assets in securities.[1]  Defendant Grasswood, Inc. ("Grasswood") is an investment consulting firm hired by Trustees in late 2002 to provide them with advice regarding investment policies, investment allocations, investment managers, and all other matters regarding the investment of the IATSE Pension Plan's assets. Grasswood remained the Plan's consultant until 2010.   Grasswood's fee for acting as an investment consultant for Trustees was $16,000 per year.

The IATSE Plan had in place a written investment policy establishing the guidelines for investment managers to follow in executing investments ("the Investment Policy").  The Investment Policy states, in relevant part:

> The investment managers shall use their best efforts to obtain execution of orders through responsible brokerage firms at the most favorable prices and competitive commission rates.  An Investment Manager may accept the instructions of the Trustees to place transaction orders with a particular broker-dealer firm provided such instruction is in writing and contains the Trustees' representation that such instructions are permitted by the Plan's underlying instruments, are in the interests of the Plan participants and beneficiaries, and will not result in a violation of the "prohibited transactions" provisions of ERISA.

Trustees assert, and Defendants do not dispute, that Defendants were aware of the Investment Policy.  In fact, Mr. Stevens developed the Policy, and Messner was involved in reviewing and commenting on draft investment policies, and signed the

///

---

[1]Trustees state that Messner obtained its position with the IATSE Pension Trust because Defendant Dale Stevens, a principal in Grasswood, referred the business to Messner.  Defendants assert that Stevens did not refer the business to Messner, but that Messner was included in a search that was provided to IATSE, and Messner was then hired.

portion of the IATSE Pension Plan's Investment Policy specific to Messner's investment assignment.

### B.      The Plan's Design and Execution

#### 1.      Investment Procedures

In order to understand the disputed investment plan here, the Court provides a brief summary of the investment procedures at issue.

Investment managers, like Messner, employ portfolio managers and analysts who decide what stocks they should buy or sell on behalf of their clients who use brokers to perform trades. Trades may be done via a "directed account" if the client has directed a particular broker to be used. When a client has not directed a manager such as Messner to always use a particular broker, Messner selects the broker. In making that selection, Messner can work directly with the clearing broker, who completes the trade, without going through an introducing broker, whose role is to introduce a manager to a clearing broker.

When making a trade, the trader can negotiate the commission rate from anywhere between 1.5 cents to 6 cents per share. The trader and the portfolio manager select a broker by looking at commission amounts, and at whether or not a broker has provided the manager with research. However, some brokers are "execution only," and provide no research or other services to managers and therefore generally charge a lower commissioner rate sufficient to cover the base clearing costs.

### C.      Design and Execution of Trustees' Investment Policy

IATSE claims that its Investment Policy had in place a "commission recapture program." Under the program, when Messner selected a broker to buy and sell securities, if a particular broker was the best option to make a trade, Messner was meant to use that broker to make the trade because IATSE's Pension Trust would receive a refund of any "excess" commissions paid to the broker. However, according to Trustees, Messner treated the commission recapture program as a directed brokerage account, where *all* trades were sent to Syndicated Capital ("Syndicated"), the introducing broker,

and Wedbush, Inc. ("Wedbush") as the clearing broker, even if these brokerage firms were not the best options for trading.  Further, instead of attempting to negotiate a competitive commission rate with Syndicated/Wedbush, Messner paid 6 cents per share in commission fees on every trade, without specific direction from Trustees to do so. Trustees assert that when placing a trade with Wedbush, an execution only broker, Messner only needed to offer a commission sufficient to cover the base clearing costs charged by the clearing broker.  Wedbush provided no additional research that would justify any higher commission rates.

Trustees aver that the directed brokerage program resulted in a benefit to Syndicated and Grasswood. That is, Stevens and Syndicated entered into an agreement whereby Grasswood would direct managers to make trades through Syndicated, and in exchange would be paid a portion of any recaptured commissions.  Any commission amounts above the actual costs of performing a trade would be paid 80% to Grasswood, with 20% retained by Syndicated.[2]   Importantly, neither Messner nor Grasswood disputes this fact.[3]  (*See* dkt. no. 79-2 at ¶ 83).  Trustees state that Grasswood did not inform Trustees that Grasswood or Stevens received compensation if Trustees directed their investment managers to use Syndicated for trading.  Trustees never entered into a written contract or agreement allowing Grasswood to profit in any way from the commission recapture program.

Defendants, for their part, argue that Trustees were well aware of the agreement with Syndicated and were directing investment managers and custodians to establish the appropriate accounts to set in place the commission recapture program.  Grasswood

---

[2]Grasswood informs the Court that due to Financial Industry Regulatory Authority ("FINRA") rules, recaptured net commissions had to be paid by Syndicated directly to Dale Stevens, rather than to Grasswood.  Stevens then transferred the funds to Grasswood.

[3]Trustees also state that Grasswood took additional arbitrary amounts from the Plan's commissions, based on its own valuation of what it deserved to be paid above the amount it had contracted with Trustees to receive.

1  claims that it retained 80% of the commission recapture fees because its annual retainer

2  with IATSE was never increased for inflation during the seven years of service to the

3  Trust, and that the total received by Grasswood, $28,000, is less than the market rate for

4  investment managers for a Trust like IATSE's.  Additionally, Messner asserts that it had

5  no knowledge of any self-dealing on Grasswood or Syndicated's behalf.

6         Defendants point to the development of the Investment Policy to support their

7  assertion that the directed brokerage and benefit arrangements were known to and

8  accepted by Trustees.  As part of its duties to the Plan, when Grasswood was retained in

9  2002, it was directed to audit the old commission recapture program.  This audit entailed

10  an examination of brokerage fees to ensure that all parties involved were fairly

11  compensated.  On December 5, 2002, former Trust Chairman Fred Davis wrote and

12  signed a letter to Messner stating that Grasswood had been hired and would be

13  supervising a new commission recapture program.  The letter regarding the commission

14  recapture program directed Messner, "subject to best price and execution," to execute

15  trades through Syndicated.  (Dkt. no. 77-5 at 58.)  Trustees claim that the IATSE

16  Pension Plan never signed on or agreed to any contract or agreement setting forth the

17  terms of the commission recapture program with either Syndicated or Wedbush.[4]

18  Defendants assert that the terms of the commission recapture program from the

19  previous investment consultant were adapted for the program established by Grasswood

20  Partners in December 2002.

21         Finally, certain benefits retained from international investments form the basis for

22  Trustees' allegations.  Trustees assert that while serving as investment consultant to

23  Trustees, Grasswood recommended to Trustees that the Plan invest with Capital

24  Research and Management Company ("Capital") to make international investments.

25  Capital is a fund manager for the Europacific Fund ("Europacific").  At the November 15,

26

27         [4]The parties also dispute whether or not Trustees knew that Stevens was
affiliated or registered with Syndicated, but do not dispute the fact that the two were
28  affiliated.  (See dkt. no. 79-2 at ¶ 80.)

2007, Trustees' meeting, Grasswood recommended that the IATSE Plan invest in Europacific. Trustees assert that although they never authorized or agreed to it, Grasswood listed itself — specifically Dale Stevens and Syndicated — as "dealer of record" on the Europacific account.  As a result, Syndicated and Grasswood received Class A share rebates, which they kept for themselves.  Grasswood does not dispute receiving such rebates, but contends that Trustees terminated its services shortly after Grasswood introduced the Europacific fund to the Plan.

### D.    Trustees File Suit

On January 10, 2011, Trustees brought this action against all Defendants alleging breach of fiduciary duties and reversal of prohibited transactions under 29 U.S.C. § 1109 and § 1106(a).

## III.    MOTION TO SEAL

Trustees move under Federal Rule of Civil Procedure 5.2(d) to seal exhibits 29 and 36 to its Motion for Summary Judgment, informing the Court that these exhibits contain information covered by a protective order issued by the Court (*see* dkt. no. 66.) Defendants do not oppose the Motion.

The Court grants Trustees' Motion.  Exhibits 29 and 36 to the Motion for Summary Judgment will be filed under seal with the Court, in accordance with the parameters set forth in the Court's Protective Order (*see* dkt. no. 66).

## IV.    MOTIONS TO STRIKE AND/OR DISREGARD

### A.    Motion to Strike

Trustees move to strike all or part of both Messner and Grasswood's Opposition Briefs.

Under Rule 12(f) a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.  However, motions to strike apply only to pleadings, and courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto.  *See Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) (denying a motion to

strike a motion and its memorandum in support of that motion, holding that "[n]either of the offending items, however, constitutes a pleading."); *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202 v. Admiral Heating & Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D. Ill. 1982) (denying a motion to strike when "the offending footnote is in a memorandum, not a pleading."). The Court therefore declines to strike the documents under Fed. R. Civ. P. 12(f). Further, for reasons stated below, the Court declines to disregard the documents, but determines that certain portions of Grasswood's Response Brief and exhibits attached thereto will not be considered.

**B.    Motion to Disregard Grasswood's Opposition or Portions Thereof**

First, Trustees argue that the Opposition violates Local Rule 7-4 because it exceeds the 30-page limit. LR 7-4 requires opposition briefs and points and authorities to be 30 pages or less, excluding exhibits. Grasswood includes two fact statements in its Opposition – one brief statement of facts, included as part of its points and authorities, and another lengthier statement of facts attached as an exhibit to its Opposition Brief. Grasswood's Opposition is 21 pages long, but includes a separate 42-page statement of facts. (Dkt. no. 79-2.) Nevada's Local Rules do not explicitly permit a separate submission of statement of facts. However, the Court agrees with Trustees that Grasswood's separate statement of facts is an attempt to avoid the page limits set by the District of Nevada's local rules. Nevertheless, the Court will not disregard the Response. Grasswood is instructed to seek leave of the Court before filing excess pages in the future. *See* LR 7-4.

Second, Trustees moves to strike the Opposition in its entirety because Grasswood's short statement of facts included in its points and authorities lacks a single citation to the record, in violation of LR 56-1. On review, Trustees is correct that Grasswood's Opposition violates LR 56-1. The Court cannot consider the statements contained therein as true, as the statements are unauthenticated without proper citations to the record. *See Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). Grasswood is instructed to abide by LR 56-1 in the future. Moreover, "judges need not paw over the

files without assistance from the parties." *Id.* at 775 (*quoting Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999) (brackets omitted)).  The statement of facts should properly cite to the record so that the Court may find support for each of Grasswood's assertions contained therein.  The Court accordingly does not consider the information contained in the Response's statement of facts.

Third, Trustees assert that Grasswood's Opposition impermissibly relies on inadmissible documents that were not disclosed in discovery.  (*See* dkt. no. 90-1, ex. 1.) Trustees inform the Court that Grasswood attaches 10 exhibits to its Opposition, but only exhibit 10 includes an item that was included in Grasswood's Initial Disclosures. Trustees argue that Grasswood is precluded from using this evidence in its Opposition under Federal Rule of Civil Procedure 37(c)(1).  The Court agrees, and will not consider these exhibits.

Grasswood's violations of the local rules (or attempts to avoid the strictures of the local rules) is a sanctionable offense, and will not be tolerated by this Court in the future.

## C. Motion to Disregard Messner's Opposition

Messner's Opposition, like Grasswood's, contains a separate statement of facts which, when combined with Messner's Opposition, exceeds the page limits of Local Rule 7-4.  Trustees move to strike Messner's Opposition on this ground.  Messner's Opposition is 17 pages.  Its "separate statement of undisputed/disputed material facts in support of opposition to motion for summary judgment" is 42 pages long.  For the same reasons articulated above in Part IV(B), the Court declines to disregard  the Opposition or the attached statement of facts.  However, the Court agrees with Trustees that Messner's separate statement of facts is an attempt to avoid the page limits set by the District of Nevada's local rules.  Messner is instructed to seek leave of the Court before filing excess pages in the future.  *See* LR 7-4.

The Court also notes that Trustees' Reply Brief exceeds the page limit requirement of Local Rule 7-4.  Trustees explain that their Reply is 13 pages too long in order to respond to Messner's lengthy Opposition.  Trustees did not seek or acquire the

1   Court's permission before filing a lengthy Reply Brief.  Trustees are instructed to abide

2   by the Local Rules in all further filings with this Court.[5]

3   **V.    MOTION FOR SUMMARY JUDGMENT**

4      **A.    Legal Standard**

5         The purpose of summary judgment is to avoid unnecessary trials when there is no

6   dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*., 18

7   F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings,

8   the discovery and disclosure materials on file, and any affidavits "show there is no

9   genuine issue as to any material fact and that the movant is entitled to judgment as a

10  matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine"

11  if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

12  the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

13  under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

14  Where reasonable minds could differ on the material facts at issue, however, summary

15  judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

16  1995).  "The amount of evidence necessary to raise a genuine issue of material fact is

17  enough 'to require a jury or judge to resolve the parties' differing versions of the truth at

18  trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l*

19  *Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).  In evaluating a summary

20  judgment motion, a court views all facts and draws all inferences in the light most

21  favorable to the nonmoving party.  *Kaiser Cement Corp. v.  Fishbach & Moore, Inc.*, 793

22  F.2d 1100, 1103 (9th Cir. 1986).

23        The moving party bears the burden of showing that there are no genuine issues

24  of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In

25  order to carry its burden of production, the moving party must either produce evidence

26  _____

27        [5]Trustees also argue that Messner's Opposition relies on inadmissible expert
    testimony.  The Court did not consider this testimony and therefore does not address this
28  objection.

9

negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).   Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.   The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B.    Statute of Limitations

Both Defendants argue that the Employee Retirement Income Security Act of 1974's ("ERISA") statute of limitations bars Trustees' recovery.   Defendants assert that ERISA's 6-year statute of limitations narrows the Court's inquiry to events that took place no earlier than on or after January 12, 2005.

Trustees counter by arguing that Defendants have waived the statute of limitations defense.   Federal Rule of Civil Procedure 8(c) requires that in response to a pleading, a party must affirmatively state all affirmative defenses.   Among the affirmative defenses that must be pled is a statute of limitations defense.   Fed. R. Civ. P. 8(c)(1).

"[A]n affirmative defense not raised by answer cannot be raised in dispositive motions that are filed post-answer."   *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) (*citing Harris v. Sec'y, U.S. Dep't of Vet. Affairs*, 126 F.3d 339, 342 (D.C. Cir. 1997)).   "Since failure to raise an affirmative defense in pleadings deprives the opposing party of precisely the notice that would enable it to dispute the crucial issues of ///

1  the case on equal terms, a defendant forfeits an affirmative defense that is not pleaded

2  in its answer or amended answer." *Id.* (quotation marks and citation omitted).

3        Defendant Messner did not list a statute of limitations defense in its Answer to

4  Plaintiff's First Amended Complaint ("FAC").  Rather, it listed several other affirmative

5  defenses, as well as the right to assert additional defenses.  (Dkt. no. 54 at 22, ¶ 18.)

6  Defendant Grasswood likewise did not list the statute of limitations in its Answer.  (Dkt.

7  no. 43.)   Therefore, Defendants are precluded from raising the statute of limitations

8  defense.

9        The Court next turns to the merits of Trustees' allegations.  Trustees assert that

10  (1) Messner did not properly investigate the appropriateness of the commission

11  recapture program or seek written confirmation from Trustees about the program, and

12  did not properly oversee Grasswood's investments; and (2) by using Syndicated/

13  Wedbush on all trades, Messner increased the excess commissions paid to Syndicated

14  and Grasswood, a large portion of which those entities retained for themselves. Trustees

15  also assert that Grasswood benefited from the commission recapture program and the

16  rebates received from the Plan's investment in the Europacific fund. In addition, Trustees

17  contend that Defendants breached their fiduciary duty by failing to comply and

18  implement the Investment Policy.

19        **C.      Reversal of Prohibited Transactions–29 U.S.C. § 1106**

20        Trustees assert that Defendants are liable under 29 U.S.C. § 1106 for deriving an

21  improper monetary benefit from Trustees' investments.

22        A plan fiduciary must discharge its duties "solely in the interest of the participants

23  and beneficiaries" for the "exclusive purpose of providing benefits" to them and

24  "defraying reasonably expenses of administering the plan."[6]  29 U.S.C. § 1104(a)(1)(A).

25  ///

26

27  _____

28        [6]There is no dispute that both Messner and Grasswood had a fiduciary
relationship with Trustees.

11

29 U.S.C. § 1106 states, in relevant part:

(a) Transactions between plan and party in interest
Except as provided in section 1108 of this title:
(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct  or indirect--
(A) sale or exchange, or leasing, of any property between the plan and a party in interest
. . .
(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; []

 (b) Transactions between plan and fiduciary
A fiduciary with respect to a plan shall not--
(1) deal with the assets of the plan in his own interest or for his own account,
. . .
(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan

Moreover,

[29 U.S.C.] § 1106(b) thus creates a per se ERISA violation; even in the absence of bad faith, or in the presence of a fair and reasonable transaction, § 1106(b) establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting employee benefit plans. In essence, a combined reading of §§ 1106 and 1108 and the relevant regulation suggests that a fiduciary, normally permitted to receive reasonable compensation for services rendered-this rule is preserved by the § 1108 exemption–may not if self-dealing is involved in the transaction securing the payment.

*Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir. 2001) (*citing Gilliam v. Edwards*, 492 F. Supp. 1255, 1263 (D.N.J. 1980)).

The Court first notes that contrary to Trustees' assertion, there is no evidence that Messner benefited from Grasswood's arrangement with Syndicated. Messner is therefore not liable under 29 U.S.C. § 1106 under the facts presented.  The Motion for Summary Judgment on this claim as to Defendant Messner is accordingly denied.[7]

///

---

[7] Moreover, Trustees do not have a viable cause of action under 29 U.S.C. § 1106 against Messner for its failure to act as Grasswood's gatekeeper.  A fiduciary's failure to act does not form the basis for a prohibited transaction under the statute. *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1127 (C.D. Cal. 2009).

1    Grasswood does not deny that any commission amounts above the actual costs
2    of performing a trade were paid 80% to Grasswood, and 20% retained by Syndicated.
3    However, Grasswood argues that the benefit it retained from the investments with
4    Syndicated/Wedbush does not violate 29 U.S.C. § 1106 for three reasons: (1) the
5    directed brokerage agreement was similar to a prior agreement between Trustees and
6    Wurts and Associates; (2) Trustees knew about and implicitly endorsed the arrangement
7    between Grasswood and Syndicated; and (3) Grasswood was permitted to retain a
8    benefit under 28 U.S.C. § 1108(c).  Point one is entirely without merit.  Merely because
9    there may have been a prior agreement, legal or not, between Trustees and its former
10   investment consultant has no bearing on the legality of the arrangement between
11   Trustees and Grasswood.  To the extent Grasswood argues that the prior agreement
12   was requested by Trustees, this assertion is related to point two – Grasswood's
13   argument that Trustees requested and implicitly endorsed Grasswood's benefit.  This
14   argument is deeply flawed, both factually and legally.  First, there is no evidence that
15   Trustees' Investment Policy was a directed brokerage agreement, as Grasswood
16   asserts.  Grasswood presents the evidence of Chairman Fred Davis' letter, which states
17   that "subject to best price and execution," Grasswood would be supervising a
18   commission recapture program through its broker-dealer, Syndicated.  (Dkt. no. 77-5 at
19   58.)  Contrary to both Defendants' assertions, this is not an implicit endorsement of a
20   directed brokerage program, because Davis stated that Grasswood was to execute
21   trades *subject to best price and execution* with Syndicated, and the record clearly
22   demonstrates that 6 cents per trade was not consistently the best price and execution,
23   nor do Defendants seriously contest this point.  Even were the Davis letter construed as
24   an implicit endorsement of a directed-brokerage investment plan contrary to the plain
25   language of the Policy, the Plan's Investment Policy, which Grasswood helped
26   formulate, is clear that only the Board of Trustees can amend the Policy; nowhere does
27   the Policy state that a rogue board member may unilaterally modify the Investment
28   Policy.  (*See* dkt. no. 77-2 at 98.)

More importantly for the purposes of 29 U.S.C. § 1106, Grasswood can point to no evidence demonstrating that Trustees explicitly or implicitly endorsed Grasswood retaining 80% of the excess commissions garnered through its investments on the Plan's behalf. The fact that Trustees may have known about the benefit program due to quarterly letters provided to the Plan President also does not suffice to defeat summary judgment here. *See Patelco*, 262 F.3d at 911 ("even in the absence of bad faith, or in the presence of a fair and reasonable transaction . . . a fiduciary[] . . . may not [receive reasonable compensation for services rendered if] self-dealing is involved in the transaction securing the payment."). The law is clear: a pension plan fiduciary cannot benefit from plan investments. 29 U.S.C. § 1106; *Patelco*, 262 F.3d at 910-911. No proviso is made for instances where the Plan may have been informed about said self-dealing.

For reasons intimated above, to the extent Grasswood argues that the benefit it retained is excused under 29 U.S.C. § 1108(c), this argument fails. 29 U.S.C. § 1108(c) applies only to self-dealing transactions with parties-in-interest, not self-dealing transactions benefiting fiduciaries, and therefore, while the statute may exempt Syndicated from liability, the same cannot be said of Grasswood. *Patelco*, 262 F.3d at 910, 911.

As to the claim that Grasswood benefited from the Plan's investment in the Europacific fund, Grasswood does not dispute that it obtained Class A share rebates on the Europacific investment; it only disputes the duration of its role as the investment consultant in recommending the Europacific investment. However, the timing of when Grasswood's services were terminated may affect the damages, not liability. Grasswood undeniably benefited from the plan investment in the Europacific fund in that Grasswood received the Class A share rebates.

The facts are undisputed that Grasswood acted as the Plan's fiduciary, and benefited from Plan investments. The Court accordingly grants Trustees' Motion for Summary Judgment on this claim as to Defendant Grasswood.

1

2

### D.     Breach of Fiduciary Duty

#### 1.     Messner

The Court agrees with Trustees that Messner breached its fiduciary duty by allowing Grasswood to commit a breach of its fiduciary duty and obtain a benefit from the Plan's investments, by not seeking the best brokerage commissions with a competent broker, and by overpaying commission rates above the reasonable rate.  Messner does not provide evidence rebutting Trustees' factual assertions regarding these actions; and such actions clearly breach the Plan's terms, which state that "investments shall be chosen to maximize the return on invested assets."  (Dkt. no. 77-2 at 95.)

As discussed above in Part (V)(C), the plain terms of the Investment Policy prohibit directed brokerage.  The Plan states: "[t]he Investment Managers shall use their best efforts to obtain execution of orders through responsible brokerage firm<u>s</u> at the most favorable prices and competitive commission rates."  (Dkt. no. 77-2 at 96; emphasis added).  The plural noun, firm<u>s</u>, clearly precludes the use of a directed brokerage account.  Further, while the Court determines that the Fred Davis letter does not request a directed brokerage investment plan, were there evidence that anyone associated with Trustees had requested such a plan, it would be immaterial here. Messner owes a duty of care to the *Plan*, and must execute investments according to the Plan's best wishes, not the whims of the Trustees' members.  *See* 29 U.S.C. § 1104(a)(1)(A)(i).  There is no dispute that Messner was involved in the development of the Investment Policy, and understood its terms.  As such, Messner understood that only the Board of Trustees, not a single board member, had the right to amend the Investment Policy.  (*See* dkt. no. 77-2 at 98.)  Thus, disregarding the plain terms of the Plan and allowing Grasswood to benefit from Plan investments is a clear breach of Messner's fiduciary duty owed to Trustees.  *See id.*; 29 U.S.C. §§ 1104(a)(1)(B),(D) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan . . . .").

### 2.    Grasswood

For reasons stated above in Part (V)(D)(1), Grasswood likewise breached its fiduciary duties to Trustees by acting in contravention to the Plan's plain terms, by obtaining a benefit from the commission recapture program and by failing to supervise the commission recapture program pursuant to the Investment Policy.[8]

## VI.    DAMAGES

The Court's rulings affect Trustees' Motion with respect to damages.  Moreover, the Court determines that a separate hearing regarding the proper calculation of damages is necessary.  A hearing on the matter will be scheduled by the Court via minute order in the coming weeks.

## VII.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above.  The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion for Summary Judgment (dkt. no. 77) is GRANTED IN PART.  The Court GRANTS the Motion on the question of Defendants' Messner and Grasswood's liability to the following extent:

- The Motion is DENIED on Plaintiff's 29 U.S.C. § 1106 claim against Defendant Messner;
- The Motion is GRANTED on Plaintiff's 29 U.S.C. § 1106 claim against Defendant Grasswood;
- The Motion is GRANTED on Plaintiff's breach of ERISA fiduciary duties claims against Defendants Messner and Grasswood.
- The Court withholds judgment on the issue of damages.

---

[8]The evidence is clear that Grasswood, like Messner, was involved in the development of the Investment Policy and understood that only the Board of Trustees could modify the Investment Policy.

1    IT IS FURTHER ORDERED that Plaintiff's Motion to Seal (dkt. no. 78) is
2    GRANTED.

3    IT IS FURTHER ORDERED that Defendant Messner's Motion for a Hearing
4    regarding Plaintiff's Motion for Summary Judgment (dkt. no. 92) is GRANTED.   The
5    Court will schedule a hearing regarding damages.

7    ENTERED THIS   27th day of March 2013.

9    _____
10   MIRANDA M. DU
     UNITED STATES DISTRICT JUDGE