UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| TRUSTEES OF THE NEVADA RESORT ASSOCIATION – INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA LOCAL 720 PENSION TRUST, <br><br> Plaintiff, <br><br> v. <br><br> GRASSWOOD PARTNERS, INC., et al., <br><br> Defendants. | Case No. 2:11-cv-00044-MMD-NJK <br><br> ORDER REGARDING DAMAGES |
|---|---|

**I.     SUMMARY**

On March 27, 2013, the Court granted Plaintiff's Motion for Summary Judgment.[1] (Dkt. no. 96.)  However, the Court did not determine what damages were owed to Plaintiff, and scheduled the matter for a hearing on April 22, 2013.  After considering the parties' representations at the hearing and in their respective motions, oppositions, and reply briefs, the Court enters this Order Regarding Damages.

**II.    ANALYSIS**

**A.     Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

---

[1] The relevant factual background regarding this case is recounted in detail in that Order.

F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

2

more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B. Damages Resulting from the Excess Commissions

Trustees state that the excess commissions total $275,647.43.  The calculations for these figures are provided to the Court in Exhibit 39 to their Motion for Summary Judgment. (Dkt. no. 77-6, Ex. 39.)  Defendants contest the validity of this figure, but offer no evidence demonstrating that the amount is incorrect, nor do they propose a different value.

"In determining the amount that a breaching fiduciary must restore to the [plan] as a result of a prohibited transaction, the court should resolve doubts in favor of the [plan]." *Kim v. Fujikawa*, 871 F.2d 1427, 1430-31 (9th Cir. 1989).  Where the exact damages are difficult to establish due to the conduct of the breaching ERISA fiduciaries, all doubts are resolved in favor of the ERISA plan. *Patelco Credit Union v. Sahni*, 262 F.3d 897, 912 (9th Cir. 2001) (internal quotes and citations omitted).

In light of the standard favoring the Plan, and because Defendants do not provide any evidence countering Plaintiff's evidence, the Court grants summary judgment in Plaintiff's favor regarding these damages.  *See Bhan*, 929 F.2d at 1409.

As Messner was not the only investment manager that took part in these investments, the parties agree that Messner's liability should be reduced pro rata based on the percentage of its Syndicated/Wedbush commissions as compared to the total Syndicated/Wedbush commissions at issue. This is 83%. Thus, Messer and Grasswood are jointly and severally liable for excess commissions totaling $228,787.36.  Grasswood alone is liable for $46,860.07, the remaining amount of excess commissions wrongfully kept from the Plan.

///

///

### C. Performance Differential Damages[2]

Trustees assert that they are owed $470,870 for trading losses caused by diverting all trades to Syndicated/Wedbush, because Syndicated/Wedbush trades were routinely done at worse prices than comparative trades Messner was performing for its other clients. Trustees arrive at this figure based on comparative trade information provided to them by Messner. (Dkt. no. 77-9, exhs. 51 and 52.)

Messner argues that Trustees' damages calculation fails to take "slippage" into account. "Slippage" describes the effect of increasing the volume of securities purchased and sold in any group on the overall price and timing of execution.[3] Messner accordingly requests that the performance differential damages be discounted by a reasonable amount.

The Court determines that Messner has provided evidence that slippage may have affected the price of the trades performed for Trustees, and that Trustees' requested sum of damages did not take slippage into account. (Dkt. no. 81 at 12-13.) Because of this, there exists a genuine issue of material fact regarding whether these damages were properly calculated. This issue must be resolved at trial.

The parties also contest whether awarding losses for the performance differential would constitute double recovery on top of the damages awarded for the excess commissions. The parties will have an opportunity to present evidence on this issue at trial.

///

---

[2] The parties disagree about whether these damages should be called "performance differential" or "price differential" damages. For the purposes of this Order, the Court refers to these damages as "performance differential damages."

[3] Trustees dispute the admissibility of Messner's evidence regarding slippage. The Court concludes that this evidence is admissible based on the Smith Declaration (dkt. no. 81). Trustees claim that the declaration lacks foundation regarding Smith's qualifications to testify on slippage. However, Smith states that he is a portfolio manager and the Chief Administrative Officer and Chief Compliance Officer at Messner & Smith, and that he has personal knowledge of the facts stated in the declaration. (Dkt. no. 81 at 2.) This satisfies evidentiary foundational requirements, *see* Fed. R. Evid. 901(b)(1).

### D. Damages Resulting from the Europacific Investment

Trustees request $140,267.43 in damages from Grasswood only in connection with the investment in Europacific class A shares. In their Opposition (dkt. no. 79), Grasswood asserted that many of these shares were sold after Grasswood had been terminated from the Plan. Yet the date when the shares were *sold* is of no import; it is the *purchase price differential* between Class A shares and the institutional shares that Trustees assert is owed to them. At the April 22, 2013, hearing, Grasswood admitted that the bulk of the shares were purchased while Grasswood was still employed by Trustees and that the only difference between these two types of shares was the price. The Court determines that there is no factual dispute regarding this matter. Grasswood caused the Plan to pay $140,267.43 more in class A shares than it would have paid in institutional shares by recommending to the Plan that it purchase class A shares. It did this in order to subsidize the 12(b)-1 rebates made to Grasswood as a result of purchasing class A shares. Grasswood must compensate Trustees accordingly.

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Grasswood and Messner must compensate the Plan as set forth herein.

IT IS FURTHER ORDERED that this case will proceed to trial on the limited issues of (1) whether Messner violated 29 U.S.C. § 1106;[4] and (2) performance differential damages. The parties are accordingly ORDERED to file their joint pretrial order within thirty (30) days of this Order.

DATED THIS 1st day of May 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff's Motion for Summary Judgment on this claim was denied in this Court's March 27, 2013, Order. (Dkt. no. 96 at 12.)

5